**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RICHARD R.S.,

Civ. No. 26-2451 (JRT/ECW)

Petitioner,

v.

TODD BLANCHE, *Acting U.S. Attorney General*;

MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*;

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

TODD M. LYONS, *Acting Director, U.S. Immigration and Customs Enforcement*;

DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

---

Kira Aakre Kelly, **CLIMATE DEFENSE PROJECT**, Post Office Box 7040, Minneapolis, MN 55407, for Petitioner.

David W. Fuller, David R. Hackworthy, Joshua Sweeney, and Trevor Brown, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondents.

On May 1, 2026, Petitioner Richard R.S. filed a Petition for Writ of Habeas Corpus, alleging that he had been unlawfully arrested and detained by immigration officials. Two days prior, on April 29, 2026, Petitioner had been ordered removed from the United States by an immigration judge.

The Court directed the parties to provide argument on the habeas petition. But on May 7, 2026—while the petition was pending—Respondents removed Petitioner to Nicaragua. Petitioner contends that his removal from the United States was unlawful because the immigration judge's removal order issued on April 29 had not yet become final—because the time to appeal the order had not lapsed, and Petitioner had not waived his right to appeal. Petitioner asks the Court to direct Respondents to facilitate Petitioner's return to the United States and release from custody.

While Petitioner may squarely challenge his removal from the United States in other proceedings, the sole matter before this Court is Petitioner's Petition for Writ of Habeas Corpus. The Court concludes that it possesses jurisdiction to adjudicate the merits of the Petition despite Petitioner's removal from the United States—however, the record before the Court demonstrates that Petitioner's initial arrest and detention were lawful. Accordingly, the Court will deny the habeas petition and dismiss this case.

## BACKGROUND

### I. ALLEGATIONS IN PETITION FOR HABEAS CORPUS

Petitioner filed a Petition for Writ of Habeas Corpus on May 1, 2026. (Petition for Writ of Habeas Corpus ("Pet."), May 1, 2026, Docket No. 1.) The Petition alleges the following facts:

- Petitioner is a citizen of Nicaragua and a resident of Sioux Falls, South Dakota. (Pet. ¶ 7.)

- "[O]n April 12, 2026, state law enforcement agents acting at the behest of immigration authorities broke down the door to [Petitioner's] home, entered, and took him into custody." (*Id.* ¶ 16.)

- "ICE officers came and took possession of [Petitioner], and over the course of the next two days he was brought to the Freeborn County detention facility in Minnesota." (*Id.* ¶ 16.)

- "At no point in time was [Petitioner] shown a warrant for his arrest, nor did the arresting ICE officers identify themselves and include the reason for his arrest." (*Id*. ¶ 17.)

- "Two weeks later, [Petitioner] was brought to the Whipple [Building], where ICE agents told him that he had no chance at getting free or obtaining status in the United States, and that he'd better save himself the trouble and sign a deportation order." (*Id.* ¶ 18)

- "Petitioner refused to sign the papers, but on May 1, 2026, ICE agents took his finger and placed it in ink and put his fingerprint on a deportation order anyway." (*Id.* ¶ 18)

- "[U]pon information and belief, Petitioner was not adequately advised of his rights, examined by an officer other than the arresting officer following his arrest, nor was a custodial determination made within 48 hours of

Petitioner's warrantless arrest making findings as to whether Petitioner was a flight risk." (*Id.* ¶ 22.)

On May 5, 2026, the Court issued an order stating that, if Petitioner was presently detained in Minnesota, Respondents were enjoined from removing him from the state. The Court also ordered briefing on the merits of the petition. (*See* Docket No. 3.)

## II.    PROCEDURAL HISTORY AND EVIDENCE PRESENTED BY PARTIES

### A.    Parties' Initial Briefing

On May 7, 2026, Respondents filed a response, supported by a declaration of Deportation Officer Steven Draves. (*See* Docket Nos. 5, 6.)  Mr. Draves attested to the following facts:

- On April 14, 2026, ICE encountered Richard R.S. at the Minnehaha County Jail in Sioux Falls, South Dakota, "after he had been arrested for Aggravated Domestic Violence and Simple Assault Domestic."  (Declaration of Steven Draves ("Draves Decl.") ¶ 5, May 7, 2026, Docket No. 6.)

- After an immigration detainer and an arrest warrant were issued, ICE took custody of Petitioner and issued him a Notice to Appear.  (*Id.* ¶¶ 5–6.)

- "On or about April 15, 2026, [Petitioner] was transferred to Freeborn County Jail."  (*Id.* ¶ 7.)

- "On or about April 29, 2026, [Petitioner] appeared before the Immigration Judge at Fort Snelling, MN and requested a removal order and waived appeal.  The Immigration Judge issued a final order of removal."  (*Id.* ¶ 8.)

- "On or about May 1, 2026, [Petitioner] was transferred to Alexandria, Louisiana."  (*Id.* ¶ 9.)

- "On May 7, 2026, [Petitioner] was removed to Nicaragua."  (*Id.* ¶ 10.)

Given these representations, Respondents argue that the habeas petition was moot, because Petitioner was no longer in ICE custody.  (Resp. at 3–4, May 7, 2026, Docket No. 5.)

Petitioner filed a Reply disputing whether Petitioner was subject to a final order of removal when he was transported to Nicaragua.  (Reply, May 8, 2026, Docket No. 7.) Petitioner stated that it is "patently untrue" that Petitioner's removal order was final, because the 30-day window to appeal the order had not yet expired.  Petitioner requested that the Court:

> fashion a remedy that would bring Petitioner back and/or impose sanctions for Respondents' transfer of Petitioner outside of the United States without a final removal order . . . . .  Such a remedy would address Petitioner's ongoing injury, in the form of the separation from his partner and his loved ones in Minnesota that he will not be able to see without being brought back to the United States and released so that he may properly appeal his removal order and avoid a bar on reentry.

(Reply at 9.)

### B.   Respondents' Supplemental Response

The Court ordered Respondents to file additional briefing and scheduled a status conference for May 15, 2026.   (Order, May 12, 2026, Docket No. 8.)   In their memorandum, Respondents maintained that the removal order was "final"—not because the appeal window had lapsed, but because Petitioner had waived his right to appeal. Specifically, Respondents argued that Petitioner had waived his right to appeal because he "requested removal, made admissions and concessions, sought no relief from removal . . . . and did not express any desire to appeal." (Resps.' Supp. at 3, May 13, 2026, Docket No. 9.)

However, page two of the immigration judge's order contains check-boxes next to the word "Appeal," allowing both the Department of Homeland Security and Petitioner to indicate whether they "waived" or "reserved" their right to appeal.  None of the boxes were checked on Petitioner's removal order.  (*See* Draves Decl. ¶ 8, Ex. B.)

Respondents also asserted that this Court was deprived of jurisdiction over Petitioner's habeas petition under 8 U.S.C. § 1252(g), which states that district courts lack jurisdiction "to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter."  (Resps.' Supp. at 5.)

### C.      May 27, 2026 Evidentiary Hearing

In order to address ongoing questions regarding the lawfulness of Petitioner's detention and the Court's jurisdiction over the pending habeas petition, the Court scheduled an evidentiary hearing and directed the parties to present certain evidence, including "whether Petitioner waived his right to appeal the April 29, 2026 removal order, including but not limited to a transcript or video of the hearing before the immigration judge," and "whether Petitioner's arrest and the alleged entry into Petitioner's home were conducted pursuant to a valid warrant." (Order, May 18, 2026, Docket No. 13.)

In advance of the evidentiary hearing, Respondents submitted a Declaration of Deportation Officer William J. Robinson along with several additional exhibits. (May 26, 2026, Docket No. 20.) Among these exhibits are:

- An application for a judicial arrest warrant, dated February 3, 2026, which alleges that Petitioner committed acts of domestic violence on January 11, 2026. (Resps.' Ex. 5 at 3, Docket No. 20-5.)

- A South Dakota criminal complaint, dated March 23, 2026, charging Petitioner with two counts of Aggravated Assault – Domestic, and one count of Simple Assault – Domestic. (Resps.' Ex. 5 at 1, Docket No. 20-5.)

- An immigration detainer dated April 12, 2026, stating that Petitioner "is subject to the detainer provision of the Laken Riley Act and is required to

be effectively and expeditiously taken into custody by DHS pursuant to 8 U.S.C. § 1226(c)(3)." (Resps.' Ex. 2 at 1, Docket No. 20-2.)

- An I-200 administrative warrant, indicating that it was served on Petitioner on April 14, 2026, in Sioux Falls, South Dakota. (Resps.' Ex. 4, Docket No. 20-4.)

- An audio recording of Petitioner's April 29, 2026 immigration hearing. (Resps.' Ex. 7, Docket No. 20-7.)

The Government argues that these exhibits disprove the allegations in Petitioner's habeas petition because they "reflect that ICE/ERO first encountered Petitioner at the Minnehaha County Jail after Petitioner's local criminal arrest on domestic-assault charges," and "do not reflect that ICE officers entered Petitioner's residence in connection with that local criminal arrest." (Resps.' Br. at 3, May 26, 2026, Docket No. 19.)

In his briefing in advance of the evidentiary hearing, Petitioner acknowledged that "Petitioner's encounter with immigration authorities did not begin inside Petitioner's home, but at a county jail in South Dakota." (Pet.'s Br. at 2–3, May 26, 2026, Docket No. 18.) Petitioner still maintains, however, that his initial arrest and detention were unlawful because of procedural defects in the service of the I-200 administrative warrant.

**DISCUSSION**

After careful consideration, the Court will deny Petitioner's habeas petition.

**I.    JURISDICTION**

Before turning to the merits of Petitioner's habeas claims, the Court concludes that it continues to possess jurisdiction over the habeas petition despite Petitioner's removal from the United States.

First, this case is not moot.  "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  *Knox v. Service Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012) (alteration in original) (quoting *Ellis v. Railway Clerks*, 466 U.S. 435, 442 (1984)).  28 U.S.C. § 2241 empowers the Court to hear a person's challenge to the lawfulness of their immigration detention; and under certain narrow circumstances, the Court is empowered to direct the Government to facilitate an individual's return to the United States if necessary to effectuate its jurisdiction.  *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025).[1]  Petitioner's removal from the United States, therefore, does not necessarily moot the petition, because it remains within the Court's power to grant the relief he seeks—release from unlawful detention.

---

[1] *See also Zapata v. Mullin*, Civ. No. 26-1560, 2026 WL 1352420, at *2 (D.D.C. May 13, 2026).

Second, for two reasons, 8 U.S.C. § 1252(g) does not deprive the Court of jurisdiction in this case. The Court first notes that the legal claims brought in Petitioner's May 1, 2026 habeas petition—that his arrest and detention violated the Immigration and Nationality Act and the United States Constitution—fall outside the "limited subset of deportation claims," which § 1252(g) shields from review. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999). The Supreme Court has stated that the jurisdiction-stripping provision of § 1252(g) is "narrow[]," and that it "applies only to" the Attorney General's decisions to "commence proceedings, adjudicate cases, or execute removal orders." *Id.* Petitioner's habeas claims do not implicate these "three discrete actions." *See id.*

Nor is the Court deprived of jurisdiction because granting the ultimate relief Petitioner now requests (return to the United States and release from custody) would require the Court to consider the lawfulness of Petitioner's removal to Nicaragua. The Court acknowledges that the Eighth Circuit has interpreted § 1252(g) to apply even where the Attorney General may have lacked authority to effectuate a removal order, *see Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017); but the Eighth Circuit has also stated that where a "district court's habeas review" requires consideration of "a pure question of law," implicating "the Attorney General's legal conclusion" that she is authorized to remove a noncitizen, such questions are "simply outside the scope of the jurisdiction-stripping provision of §1252(g)," *Jama v. I.N.S.*, 329 F.3d 630, 632–33 (8th Cir. 2003)).

Respondents removed Petitioner from the United States while his habeas petition was still pending. Petitioner argues that the Court can still grant his habeas petition because he was not subject to a final order of removal, and thus, his removal was unlawful. *See* 8 C.F.R. § 1241.1; *see also* 8 U.S.C. § 1101(47). These facts present the Court with a narrow legal question: Was the immigration judge's removal order "final"? On the available record, the Court concludes that the answer is no. Under Respondents' own regulations, a removal order becomes final in only six ways, including: "waiver of appeal" by the individual subject to removal; "expiration of the allotted time of an appeal"; and the dismissal of an appeal. *See* 8 C.F.R. § 1241.1. The window for Petitioner to appeal the immigration judge's order had not expired, and Respondents have presented no evidence that Petitioner knowingly and affirmatively waived his right to appeal. Respondents rely on the contention that Petitioner never actively expressed a desire to appeal—but this is not enough to prove the existence of a waiver, particularly because the immigration judge's removal order did not in any way reflect a waiver.[2] Accordingly, the removal order had not become final.

In § 1252(g), Congress barred district courts from "second-guess[ing] the Attorney General's exercise of [her] discretion," to execute a lawful removal order. *Jama*, 329 F.3d

---

[2] Respondents assert that the statements contained in audio recording of the April 29, 2026 immigration hearing show that Petitioner waived his right to appeal. (Resps.' Mem. at 3, May 13, 2026, Docket No. 9.) The Court's review of that audio recording, however, revealed no such evidence.

at 632.  But the Court concludes that where an individual is removed from the United States while their habeas petition, challenging their initial arrest and detention, is still pending, the Court's jurisdiction must continue if Petitioner's removal was unlawful.  To conclude otherwise would raise concerns regarding executive authority to unilaterally circumvent the judiciary's role in adjudicating habeas claims brought by immigrant detainees.  Because the Court concludes on the record before it that Petitioner was not subject to a final order of removal, and that his removal was therefore unlawful, the Court will now turn to the merits of Petitioner's habeas petition.[3]

## II.    PETITION FOR WRIT OF HABEAS CORPUS

Petitioner first claims that his arrest and detention violated the Due Process Clause of the Fifth Amendment.  (Pet. ¶¶ 49–57.)  However, the record before the Court indicates that Petitioner was detained pursuant to § 1226(c)—and the Eighth Circuit has held that mandatory detention without bond under § 1226(c) does not violate a Petitioner's procedural due process rights.  *See Banyee v. Garland*, 115 F.4th 928, 932–34 (8th Cir. 2024).  Accordingly, Petitioner's Fifth Amendment argument fails.

Petitioner also argues that his arrest and detention violated the Fourth Amendment to the United States Constitution; 8 U.S.C. § 1357 and 8 C.F.R. § 287, which

---

[3] The Court emphasizes that its jurisdiction over this case is tied to the underlying Petition for Writ of Habeas Corpus.  Accordingly, the finding that Petitioner's removal order was not final, standing alone, does not empower the Court to direct Petitioner's return to the United States. Petitioner may still directly challenge his removal through other avenues.  *See* 8 U.S.C. § 1252(a)(5).

govern ICE's authority to carry out warrantless arrests; and the *Accardi* doctrine.  (Pet. ¶¶ 58–70.)  However, Petitioner appears to acknowledge that ICE did not enter Petitioner's home without a warrant in the manner alleged in the habeas petition.  (*See* Pet.'s Br at 2–3.)  And although Petitioner's counsel argued at the May 27, 2026 evidentiary hearing that the I-200 administrative warrant authorizing Petitioner's arrest was invalid, the Court is unable to find on the record before it—which includes a criminal complaint charging Petitioner with aggravated domestic assault, an immigration detainer dated April 12, 2026, and an I-200 warrant that was served April 14, 2026 (*see* Resps.' Ex. 2, 4, 5, Docket Nos. 20-2, 20-4, 20-5)—that ICE failed to follow its own procedures in arresting Petitioner pursuant to § 1226(c)(3).  *See* 8 U.S.C. § 1226(c)(3) ("The Secretary of Homeland Security shall issue a detainer for a[] [noncitizen] described in paragraph (1)(E) and, if the [noncitizen] is not otherwise detained by Federal, State, or local officials, shall effectively and expeditiously take custody of the [noncitizen].").

### CONCLUSION

The Court concludes that it possesses jurisdiction to adjudicate Petitioner's Petition for Writ of Habeas Corpus, but that Petitioner's initial arrest and detention were lawful.  The Court will, therefore, deny the Petition.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Richard R.S.'s Petition for Writ of Habeas Corpus (Docket No. [1]) is **DENIED**.  This matter is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  June 10, 2026                        _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                  United States District Judge